UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BRENT WHITTIER,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-4142 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Brent Whittier ("Plaintiff") commenced this action under 42 U.S.C. § 405(g), seeking reversal of a decision of the Commissioner of the Social Security Administration ("SSA") that denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Complaint ("Compl."), Dkt. 1, ¶ 1.) Both parties have moved for judgment on the pleadings. (Dkts. 8, 11.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings, denies the Commissioner's motion, and remands this matter for further proceedings consistent with this Order.

## BACKGROUND

**I.    Procedural History**

Plaintiff filed an application for DIB on October 2, 2014. (Administrative Transcript ("Tr."), Dkt. 7, at ECF[1] 35, 193–94.) In his application, Plaintiff stated that, since October 29, 2013, he had been unable to work due to disability. (*Id.* at ECF 35, 159, 175.) Specifically, Plaintiff stated that he suffered from "bilateral knee derangement s/p surgery," "lumbar derangement," and "cervical derangement with nerve root involvement." (*Id.* at ECF 209.) After

---

[1] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

the SSA determined that he was not disabled (*id.* at ECF 92), Plaintiff requested a hearing and appeared before Administrative Law Judge Brian J. Crawley (the "ALJ") on May 15, 2017 (*id.* at ECF 35, 42). On June 19, 2017, the ALJ ruled that Plaintiff was not disabled and was therefore not entitled to DIB. (*Id.* at ECF 35–42.) Thereafter, Plaintiff requested review of the ALJ's decision and the SSA declined that request on May 15, 2018. (*Id.* at ECF 25–29.) This timely appeal followed. (*See generally* Compl., Dkt. 1.)

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe . . . impairment." *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 29, 2013 and that Plaintiff suffered from the following severe impairments: (1) cervical and lumbar degenerative disc disease, and (2) degenerative joint disease of the bilateral knees. (Tr., Dkt. 7, at ECF 37.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Supt. P, App. 1. In this case, the

2

ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr., Dkt. 7, at ECF 38.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform the "full range of sedentary work" as defined in 20 C.F.R. § 404.1567(a). (*Id.*)

Relying on his RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a driver or firefighter. (Tr., Dkt. 7, at ECF 41.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). (*See also* Tr., Dkt. 7, at ECF 41.) In this case, the ALJ reasoned that "[b]ased on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.28." (Tr., Dkt. 7, at ECF 42.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the

---

[2] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

3

Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

In support of his motion, Plaintiff argues that the ALJ erred in weighing the evidence by neglecting to properly consider his obesity (Plaintiff's Brief, Dkt. 9, at ECF 364–66) and improperly weighing the medical opinions provided by various physicians (*id.* at 366–71). The Court addresses each argument in turn.

### I. Consideration of Plaintiff's Obesity

When determining whether a claimant is disabled, an ALJ must "consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to constitute a disability. 20 C.F.R. §§ 404.1523, 416.923. This analysis should include (i) impairments the claimant brings to the attention of the Court, as well as (ii) impairments of which the ALJ learns through receiving evidence from other competent sources. *Id.* § 404.1512(a).

With respect to obesity—the particular impairment that Plaintiff argues the ALJ insufficiently addressed—the Court is mindful that

> [o]besity is not in and of itself a disability. However, SSR 02-1p provides that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. Nonetheless, there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases. Rather, an ALJ's failure to explicitly address a claimant's obesity does not warrant remand. When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after

4

> examining the [p]laintiff, the claimant's obesity is understood to have been factored into their decisions.

*Marchetti v. Colvin*, No. 13-CV-2581 (KAM), 2014 WL 7359158, at *18 (E.D.N.Y. Dec. 24, 2014) (quotations and citations omitted).

Applying this standard, the Court finds that the ALJ sufficiently considered Plaintiff's obesity. The ALJ not only based his evaluation on medical records that addressed Plaintiff's obesity, but also referenced obesity explicitly in his decision. In describing the evidence on which Dr. Carol Sasportas—a consultative internist who evaluated Plaintiff—rested her medical opinion, the ALJ observed that she diagnosed Plaintiff with "chronic low back pain, chronic bilateral knee pain, psoriasis, chronic neck discomfort, hypertension[,] *and obesity*." (Tr., Dkt. 7, at ECF 39 (emphasis added).) And the administrative transcript before the ALJ identified Plaintiff's obesity throughout. (*See id.* at ECF 79 (identifying Plaintiff's obesity in consultative examination), *id.* at ECF 262, 281 (identifying Plaintiff's obesity as secondary diagnosis in hospital documents), *id.* at ECF 301 (consultative report diagnosing Plaintiff with obesity).)

This amount of consideration of a claimant's obesity is plainly sufficient under precedent within this Circuit. *See, e.g.*, *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) (summary order) ("[W]e agree with the District Court that the ALJ implicitly factored [the claimant's] obesity into his RFC determination by relying on medical reports that repeatedly noted [the claimant's] obesity and provided an overall assessment of her work-related limitations."); *Talavera v. Comm'r of Soc. Sec.*, No. 06-CV-3850 (JG), 2011 WL 3472801, at *12 (E.D.N.Y. Aug. 9, 2011) ("Although [the ALJ] did not discuss [the claimant's] obesity at length in her step five analysis, I conclude that there was substantial evidence supporting [the ALJ's] implicit determination that [the claimant's] obesity would not preclude her from performing the sedentary, low-stress jobs described above."); *Guadalupe v. Barnhart*, No. 04-CV-7644 (HB), 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24,

2005) (holding that "[t]he ALJ's decision sufficiently, if somewhat indirectly, accounted for [the] [p]laintiff's obesity" where "[t]he ALJ noted [the plaintiff's] height of 5'4" and weight of 193 pounds in his decision, but did not spell out whether this had any bearing on his determination"). Accordingly, the Court declines Plaintiff's request to remand on this basis.

**II.     Treating Physician Rule**

Nevertheless, the Court holds that the ALJ failed to sufficiently analyze whether the medical opinion of Dr. Michael Hearns was entitled to deference under the treating physician rule[3] and determines that remand on this basis is appropriate. More specifically, the Court concludes that the ALJ's rejection of Dr. Hearns's April 2017 medical opinion was not supported by substantial evidence, as it was unclear from the record before the ALJ (1) whether Dr. Hearns was Plaintiff's treating physician, and (2) if so, whether the medical opinions of Dr. Helfet and Dr. Sasportas sufficed to undermine Dr. Hearns's opinion that Plaintiff was incapable of sedentary work. In rejecting Dr. Hearns's opinion, the ALJ reasoned as follows:

> Dr. Hearns, a physician, reported in a narrative report dated April 20, 2017, that the claimant has been under care in his office since July 29, 2014, for neck and back pain, bilateral knee pain and numbness and tingling of the bilateral upper and lower extremities. Examinations showed limited range of motion in the cervical and lumbar spine with trigger points and weakness of the lower extremities. There was muscle spasm and tenderness of the cervical and lumbar spine. Diagnoses were for cervical and lumbar radiculopathy, cervical herniated disc, chronic neck and back syndrome and status post bilateral knee surgeries for tendon rupture. It was assessed that the claimant has a total and permanent disability and is unfit to perform any job with the USA job market due to his medical conditions. Dr. Hearns stated that his opinion was based on the claimant's chronic symptoms and the objective medical information. The claimant's combination of anticipated absences from work, his inability to sit and stand for prolonged periods[,] and his chronic pain syndrome would interfere with his ability to perform any job within the USA

---

[3] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim because the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520c. Because Plaintiff submitted his request for DIB on October 2, 2014, the ALJ was required to apply the treating physician rule. *See* 20 C.F.R. § 404.1527.

6

> job market with or without job modifications. On April 20, 2017, Dr. Hearns assessed that, in an 8 hour workday, the claimant can sit for less than 2 hours, stand/walk for less than 2 hours[,] and lift and carry more than 5 pounds but less than 10 pounds. *Little weight is given to this opinion, as the records reveal that the claimant was treated by other providers in this practice and not Dr. Hearns, and as it is contradicted by other opinions of record (Drs. Sasportas and Helfet), which are given greater weight.*

(Tr., Dkt. 7, at ECF 39–40 (emphasis added) (citation omitted).)

The Court concludes that the ALJ's decision to accord relatively little weight to Dr. Hearns's medical opinion was unsupported by substantial evidence for two reasons.

### A. Identification of Plaintiff's Treating Physician

First, substantial evidence in the record does not support the ALJ's conclusion that Dr. Hearns was *not* Plaintiff's treating physician. "With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotations, brackets, and citations omitted). In deciding whether a doctor was a social security claimant's treating physician during the relevant time period, "the ALJ has 'an affirmative obligation to develop the administrative record.'" *Vogel v. Colvin*, No. 12-CV-3111 (FB), 2013 WL 5566108, at *4 (E.D.N.Y. Oct. 9, 2013) (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)).

The ALJ's conclusion that Dr. Hearns did not actually treat Plaintiff is contradicted by numerous documents in the administrative transcript describing various appointments Plaintiff had with Dr. Hearns. (*See, e.g.*, Tr., Dkt. 7, at ECF 295–96 (narrative report of appointment with Dr. Hearns on September 22, 2014), 306–15 (describing treatment notes from Dr. Hearns "dated November 17, 2014 through April 24, 2017" that were submitted to the ALJ).) To the extent these records were incomplete and/or deficient, the ALJ was required to "seek additional evidence or clarification when the report from [Plaintiff's] medical source contains a conflict or ambiguity that

7

must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quotation omitted). Thus, the administrative record does not provide substantial evidence to support the ALJ's conclusion that Dr. Hearns did not, in fact, treat Plaintiff.

Furthermore, in determining that Dr. Hearns was not Plaintiff's treating physician, the ALJ erroneously placed great importance on the medical opinion of Drs. Helfet and Sasportas. (*See id.* at ECF 39–41 (explaining that the ALJ granted "greater weight" to the medical opinion of Dr. Helfet, who treated Plaintiff "in December 2009 through July 2012" and Dr. Sasportas, a "consultative internist").) Dr. Helfet's treatment of Plaintiff was limited to the operation he performed on Plaintiff's knee in 2009 (*id.* at ECF 70), and his subsequent interaction with Plaintiff understandably focused exclusively on Plaintiff's knees (*id.* ECF 61). (*See id.* at ECF 260–83 (hospital records describing Dr. Helfet's operation on Plaintiff's knee).) And Dr. Sasportas only evaluated Plaintiff in her capacity as a consultative examiner, and consultative examiners cannot be considered treating physicians for purposes of the treating physician rule. *See Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (describing "a consultative examiner's opinion" as distinct and separate from "a treating physician's opinion," the former of which may only be given greater weight than the latter "if the consultative examiner's conclusions are more consistent with the underlying medical evidence").

Accordingly, under these circumstances, it is "appropriate for this Court to remand this case to the ALJ to make an explicit and supported determination as to whether Dr. [Hearns] was Plaintiff's treating physician." *Brathwaite v. Barnhart*, No. 04-CV-2850 (GBD) (DF), 2007 WL 5322447, at *12 (S.D.N.Y. Dec. 20, 2007); *see id.* at *11–12 (remanding for further proceedings

where "the question of whether [a physician] should have been considered a 'treating physician,' whose opinion should be accorded 'controlling' or at least significant weight," was unresolved in the administrative transcript).

### B. Deficiencies in Opinions of Drs. Helfet & Sasportas

Second, should the ALJ determine that Dr. Hearns was, in fact, Plaintiff's treating physician, the ALJ should engage in a more thorough analysis than the one in the original decision as to why the opinions of Drs. Helfet and Sasportas suffice to undermine the opinion provided by Dr. Hearns, whose assessment of Plaintiff was supported by objective laboratory testing including an MRI. (Tr., Dkt. 7, at 290–91.) *See Pereira v. Astrue*, 279 F.R.D. 201, 206 (E.D.N.Y. 2010) ("Social Security regulations require that an ALJ give 'controlling weight' to the medical opinion of an applicant's treating physician so long as that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2))). As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations, quotations, and brackets omitted).

The Court is unpersuaded that the medical opinions of Drs. Helfet and Sasportas—as they are laid out in the administrative record at this time and upon which the ALJ based his decision to discount the medical opinion provided by Dr. Hearns—suffice to accomplish this task, because (1)

9

Dr. Helfet's April 2017 evaluation of Plaintiff made no assessment of Plaintiff's work-related limitations and centered exclusively on Plaintiff's progress in relation to Plaintiff's knee surgery in 2009 (Tr., Dkt. 7, at ECF 305);[4] and (2) Dr. Sasportas only evaluated Plaintiff in her capacity as a consultative examiner and failed to analyze Plaintiff's MRIs. *See Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 625 (E.D.N.Y. 2017) (vacating ALJ's decision that rested on physician's opinion where "there [was] no evidence that [the physician] examined the [p]laintiff's . . . MRI"). On remand, the ALJ should further develop the record to bolster the credibility of Drs. Helfet and Sasportas or, alternatively, look to other sources of evidence to arrive at a conclusion regarding Plaintiff's entitlement to DIB. *See Burgess*, 537 F.3d at 129 ("In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." (quotation omitted)); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (quotation and ellipsis omitted)).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

---

[4] Indeed, Dr. Helfet's report makes no mention of Plaintiff's bulging discs, lumbar and right cervical radiculopathy, and bilateral carpal tunnel. (*Id.* at 305.)

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 31, 2019
      Brooklyn, New York